# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

MICHAEL A. LEMONS,                      )
                                        )
    Plaintiff,                      )
                                        )
v.                                      )          NO. 14-3163
                                        )
NANCY A. BERRYHILL,                     )
COMMISSIONER OF SOCIAL                  )
SECURITY,                               )
                                        )
    Defendant.                      )

## OPINION

RICHARD MILLS, U.S. District Judge:

This is an action to review the Commissioner of Social Security's Decision.

Both parties move for summary judgment.

## I. BACKGROUND

### A. History and medical evidence

Plaintiff Michael A. Lemons, who was born in 1958, alleges he became disabled on September 15, 2009. He has a high school education and some college credits. His past relevant work includes experience as an automobile assembler, tire repairman, correctional officer and short order cook.

In May of 2011, the Plaintiff saw Vittal Chapa, M.D., consultative examiner for the Social Security Commissioner, at which time he was 5'10" and weighed 276

pounds. Dr. Chapa noted the Plaintiff had diminished vision and his abdomen was "obese." He had 1+ edema in both lower extremities, diminished sensation in his feet, loss of vibration sense in the right foot and absent ankle reflexes. Dr. Chapa assessed him with diabetes, diabetic neuropathy, chronic obstructive pulmonary disease, chronic back pain and cough syncope. Dr. Chapa heard expiratory wheezing and diagnosed emphysema. The Plaintiff took 15 different medications at the time. Dr. Chapa conducted ventilation studies which documented an FEV1 score of 2.06, or 57%, and an FVC of 3.39, or 74%. His FEV1 increased to 65%, or 2.34, with medication.

The Plaintiff was sent to a psychologist for a mental health examination. Stephen G. Vincent, Ph.D., observed that he had significant physical complaints. He reported having trouble obtaining all of the different medications he needed and activity of any kind increased pain and discomfort, resulting in a need to pace himself and avoid overexertion. He complained of poor sleep, poor memory and difficulty staying focused. After getting this history, Dr. Vincent conducted a mental status examination. He found the Plaintiff to be fully oriented and made good eye contact. His thought processes were logical, coherent and relevant and no disturbances in perception were noted. He stated that Plaintiff had a clinically depressed mood and affect to a moderate degree. He noted that Plaintiff gave good effort during the

examination. He had difficulty recalling items and numbers. Dr. Vincent concluded that Plaintiff's difficulties with depression were secondary to his inability to adjust to physical problems and chronic pain. He suffered insomnia, fatigue, lack of interest in previously enjoyable activities, poor concentration, feelings of hopelessness, helplessness, uselessness and worthlessness, problems with lethargy, apathy and stamina, negativity and pessimism, and low positive emotionally. Cognitively, the Plaintiff had difficulties staying focused because of preoccupation with pain and distraction due to frequent shifting of posture. The Plaintiff was diagnosed with a major depressive disorder.

A state agency reviewing doctor, Vidya Madala, M.D., found that Plaintiff was limited to standing and walking about six hours out of an 8-hour day, but could still lift 25 pounds frequently and 50 pounds occasionally. The Plaintiff had no postural limitations and could climb ladders, even ropes and scaffolds, without limit. He needed to avoid concentrated exposure to extreme cold, extreme heat and vibration. The reviewing doctor recommended unlimited exposure to wetness, humidity, fumes, odors, dusts, gases and poor ventilation, hazardous machinery and heights. The only medical document referenced by the state agency doctor was Dr. Chapa's consultative examination. The physician states:

> Credibility: Claimant alleges legs and feet swell and hurt if standing for long/claimant has problems with personal care but able to cook/clean/drive and shop. The May 2011 CE shows the claimant has diabetes, diabetic neuropathy, COPD, HX of HTN, chronic lumbosacral pain syndrome, cough syncopy (sic). Therefore, the claimant's allegations are credible and supported by the objective evidence in file.

R. 381.

The Plaintiff was treated at SIU School of Medicine, where they noted poor hygiene, decreased breath sounds and problems controlling his diabetes. His EKG was consistent with an old myocardial infarction and pulmonary disease. He was prescribed Norco for pain. He experienced neuropathic pain, numbness, headaches, edema, shortness of breath and dyspnea on exertion. He had absent sensation in the feet. He was assessed with peripheral neuropathy. He weighed over 280 pounds.

Another state agency doctor, Terry A. Travis, M.D., reviewed the Plaintiff's records and opined that Plaintiff had no significant mental problems. He was assessed with only "slight" problems with activities of daily living, social functioning and maintaining concentration, persistence or pace. The doctor discussed the medical evidence as follows:

> Dx major depression, Reports feeling dep on and off for 20 years. Insomnia due to pain. Low energy, poor mem and focus, not psychotic. Can drive. Most limits related to pain. MSE – affect mod dep. Recall 0/3 after 5 min. Rest intact. Note–Claimant's MSE is normal except for appearing depressed and having problems with recall. His ADL report indicates that he can function reasonably well independently

daily in most respects with most limits related to his physical constraints and not to mental problems. Any current impairment related to mental disorder is not severe.

R. 394.

The Plaintiff developed shortness of breath and was hospitalized for three days, after increasing symptoms for over two weeks. He had an acute exacerbation of chronic obstructive pulmonary disease and asthma. He had been unable to afford his medications. He continued to have significant difficulty breathing, with frequent use of his rescue inhalers, after the hospitalization. His body mass index was 37.65. He had more pulmonary function testing showing airway obstruction and moderately reduced FEV1 to 2.22, at 58%, with FVC diminished to 3.33 or 67%. He was taking Sertraline for depression. He was diagnosed with sleep apnea, graded as severe. He was noted to have edema bilaterally in his lower extremities. By September of 2012, his shortness of breath continued to worsen. Pulmonary function tests showed his FEV1 was 1.65, or 43%, and his FVC was 2.68 or 80%, which was described as "severe." He was still obese and continued to have clinical signs of troubled breathing, including rhonchi. His body mass index remained at 39 in February of 2013. He continued to have medical signs of diabetic neuropathy, including diminished sensation, and callous formation on his feet.

B. ALJ's Decision

Administrative Law Judge David W. Thompson found that Plaintiff had severe impairments which included chronic obstructive pulmonary disease, emphysema, diabetes, spinal stenosis and obesity. However, no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he is limited to occasional crouching, crawling, kneeling, stooping, balancing, climbing ramps or stairs. Moreover, he is unable to climb ropes or scaffolding and needs to avoid concentrated exposure to extreme cold and extreme heat as well as vibration, fumes, odors, dust and gases. The ALJ further found that Plaintiff is unable to work at unprotected heights or near hazardous machinery.

The ALJ found that Plaintiff was unable to perform any past relevant work as an automobile assembler, tire repairman, correction officer, truck driver and short order cook. However, jobs exist in significant numbers in the national economy that Plaintiff can perform. The vocational expert testified that an individual of the Plaintiff's age, education, work experience and residual functional capacity could perform occupations such as enclosed facility security guard, radio dispatcher and

telephone operator. The ALJ found that those are only examples of the wide range of work available to the Plaintiff.

## II. DISCUSSION

On appeal, the Plaintiff contends the ALJ failed to adequately evaluate obesity. Moreover, the ALJ's credibility finding is factually and logically flawed and contrary to law. The Plaintiff also asserts the ALJ's disregard of Dr. Vincent's opinion is unsupportable. Finally, the ALJ's finding that Plaintiff had no transferable skills but could perform skilled and/or semi-skilled work is contradictory and requires remand.

### A. Standard of review

To establish disability, the Plaintiff must demonstrate that he had a medically determinable physical or mental impairment that prevented him from performing substantial gainful activity. When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).

Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id.* at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

### B. ALJ's consideration of Plaintiff's obesity

"Although obesity has been removed as a standalone listing from Appendix 1's listing of disabling impairments, it must still be considered when evaluating the severity of other impairments in the five-step sequential analysis." *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016). The Seventh Circuit has been critical of administrative law judges' frequent failure to "consider the bearing of obesity, even when not itself disabling, on a claimant's ability to work." *Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014). The Plaintiff contends the ALJ failed to adequately evaluate obesity in saying only that obesity, separately considered or considered in

tandem with other problems, did not meet or medically equal the listing of impairments at Step Three. The Plaintiff asserts the ALJ did not address obesity in his discussion of the residual functional capacity.

The Commissioner alleges the ALJ considered obesity in conjunction with other impairments and in determining the Plaintiff's residual functional capacity. The ALJ's Decision states in part:

> The claimant's diabetes has not been associated with an impairment that meets the criteria of a listed impairment. In addition, obesity has not been accompanied by another impairment that meets or equals the criteria of a listed impairment (Social Security Ruling 02-1p). Diabetes and obesity have been considered in conjunction with each impairment and all impairments combined. The claimant's impairments, even when combined, do not meet or equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

R. 23-24. Obesity is also specifically mentioned in the ALJ's discussion of the Plaintiff's residual functional capacity, as follows: "The claimant's chronic obstructive pulmonary disease, emphysema, back problems, diabetes, and obesity prevent him from performing strenuous activities; he is unable to lift or carry more than 20 pounds at one time or 10 pounds frequently." R. 25. The Decision also states:

> Diabetes and was [sic] other physical impairments prevent him from working at unprotected heights or near dangerous moving machinery. Neuropathy prevents him from working with extreme vibrations, and his impairments limit his ability to perform postural activities. He is

> unable to climb ladders or scaffolding, and he is limited to performing other postural activities only occasionally. He is occasionally able to balance, stoop, crouch, kneel, crawl, and climb ramps or stairs. Despite the claimant's symptoms, he is still capable of performing a wide range of light duty work.

R. 25. The Commissioner alleges the ALJ also indirectly considered the Plaintiff's obesity in noting the consultative report of Dr. Chapa, who observed that Plaintiff was obese but he did not find that his obesity precluded him from working–either singly or in combination with other impairments.

Although the discussion of obesity could have been more extensive, the Court finds that the ALJ's Decision adequately evaluated obesity. As in *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015), the ALJ found obesity to be a severe impairment and discussed the effect of that impairment on the Plaintiff's residual functional capacity by referencing Social Security Ruling (SSR) 02-1p. Moreover, the ALJ incorporated several of those limitations in finding that because of obesity and other impairments, the Plaintiff could not perform strenuous activities and he was "unable to lift or carry more than 20 pounds at one time or 10 pounds frequently" and "[h]e is able to sit, walk, or stand for about two thirds of the workday each with normal breaks." R. 25. The ALJ found that he is unable to "climb ladders or scaffolding, and he is limited to performing other postural activities only occasionally." *Id*. The Court concludes the ALJ's consideration of obesity–both

directly and indirectly--was sufficient in determining that Plaintiff could do a range of light work.

The Court further concludes that any error in the ALJ's consideration of obesity is harmless. The Plaintiff mentions how obesity might aggravate or negatively impact other disorders but does not point to any evidence in the record that occurred in this case. Accordingly, any error by the ALJ would be harmless. *See Shumaker*, 632 F. App'x at 867-68.

## C. ALJ's credibility finding

The Plaintiff alleges the ALJ's credibility finding is factually and logically flawed and is patently wrong. The ALJ's Decision states:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

R. 24. The Plaintiff asserts this statement is logically inconsistent. Indeed, the Seventh Circuit in recent years has criticized the frequent use of this or similar boilerplate language by administrative law judges to discredit a claimant's testimony. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644-

45 (7th Cir. 2012). However, the Social Security Administration's use of such meaningless boilerplate language is not enough by itself to warrant reversal. The use of such language is harmless if the ALJ provides additional reasons for his finding. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shideler v. Astrue*, 688 F.3d 306, 311-12 (7th Cir. 2011); *see also Shumaker*, 632 F. App'x (stating that "if the ALJ adequately explains her decision despite the boilerplate, this court has no reason to expand on the ALJ's analysis").

Plaintiff Lemons alleges the ALJ erroneously states that he claims to suffer from "complete and total disability." He makes no such assertion but alleges he is disabled because the medical-vocational grid rules for sedentary work direct a finding of disability. As the Commissioner notes, there is no such thing as partial disability; a claimant is either disabled or not. *See* 42 U.S.C. § 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905. Whatever the ALJ means in noting the Plaintiff's degree of disability, therefore, the Court's inquiry regarding whether he is disabled does not change.

In stating that his impairments could be reasonably expected to produce the alleged symptoms, the ALJ acknowledges that Plaintiff has met the first prong. Social Security Ruling 96-7p mandates that the ALJ provide specific reasons for the weight given to a claimant's statements and the finding on credibility "cannot be

based on an intangible or intuitive notion about an individual's credibility." The Plaintiff contends that, although the record includes physical evidence of a condition that can produce pain so bad it can be disabling itself, the ALJ provides no analysis of what weight was accorded to which of the "not entirely credible" statements of the Plaintiff, thereby violating SSR 96-7p.

The ALJ's Decision states that "the objective medical evidence does not demonstrate that the claimant is disabled and unable to work." R. 24. The ALJ notes that although the Plaintiff was hospitalized for shortness of breath, the symptoms improved when he used a CPAP machine and used medication as directed. Additionally, the Plaintiff's diabetic control improved after the use of daily glucose monitoring and insulin injections. Moreover, cardiac testing in November 2012 was normal. As for the Plaintiff's complaints of low back pain, the ALJ states that radiographic imaging revealed only mild degenerative changes. The ALJ cited Dr. Chapa's finding that Plaintiff had no motor weakness, muscle atrophy, abnormal joint motion or muscle spasm. Additionally, the Plaintiff's straight leg testing was negative bilaterally and range of motion testing of the lumbar spine was normal. The Plaintiff had no difficulty getting on or off the examination table and his gait was normal. Accordingly, the ALJ has provided specific reasons for his credibility determination. The Court finds this to be sufficient.

The Plaintiff also alleges that the ALJ cites the Plaintiff's statements and testimony regarding his daily activities as reasons to question credibility. The ALJ found that these activities "belie his claims of total disability." The Plaintiff reports that he visits a friend once a week, goes to church twice a week, shops for groceries once a month for an hour, needs rest while performing a few household chores, drives only about 30 miles per week and has trouble putting on socks but can otherwise dress himself. The Plaintiff also reported he takes care of his dog, prepares frozen dinners, does light housekeeping, shops for clothes monthly, is able to lift 25 pounds, can follow written and spoken instructions, is able to get along with authority figures and socializes with friends on a weekly basis.

The Plaintiff claims that none of this is inconsistent with a very sedentary lifestyle nor does it "belie" his claim that he is limited to sedentary exertion. The Plaintiff asserts there is no evidence to suggest that he is able to do anything remotely approaching the ALJ's assessed ability to stand and walk for two-thirds of a work day while lifting and carrying ten pounds and also lifting and carrying 20 pounds for over two and a half hours per day, five days per week, eight hours per day. Dr. Madala, the state agency physician who reviewed Dr. Chapa's report, found that Plaintiff's description of his daily activities was consistent with the severity of the

symptoms and its alleged effect on function–though he opined that Plaintiff could do more based on the objective factors in Dr. Chapa's report.

The ALJ noted the Plaintiff's complaints of disabling symptoms and cited the medical evidence and found that the objective medical evidence does not support his allegation of disability. Of course, an ALJ may consider an individual's activities of daily living in his credibility assessment. The Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). However, an ALJ may consider a claimant's description of such activities in weighing "whether his testimony about the effects of his impairments was credible or exaggerated." *Id.* For example, an ALJ may note a claimant's "ability to perform light household chores, drive a car, and shop for groceries" as one factor that weighed against the individual's account of disabling limitations. *Id.*

The Court finds no error in this aspect of the ALJ's credibility finding. The ALJ did not base his decision solely on the nature of the Plaintiff's daily activities. Rather, the ALJ considered the extensive medical evidence and noted that Plaintiff's daily activities were one factor that undermined his claim of disabling pain and symptoms. The ALJ was entitled to do this and the Court finds no error in his

determination that the objective medical evidence does not support the Plaintiff's allegations of total disability.

Additionally, because the ALJ has provided reasons why he found the Plaintiff's statements regarding his symptoms to be "not entirely credible," the Court finds that the inclusion of the familiar boilerplate language was harmless in this case.

D. Dr. Vincent's opinion

The Plaintiff alleges the ALJ's disregard of Dr. Vincent's opinion that he suffered from major depression is unsupportable. The ALJ credited a non-examining state agency doctor instead of the opinion of a consulting examiner who conducted a full mental evaluation of the Plaintiff, finding the Plaintiff had no severe mental impairment. Dr. Travis reviewed the Plaintiff's records and found that Plaintiff's depression was a non-severe mental impairment. The ALJ adopted Dr. Travis's opinion, finding that Plaintiff's depression was not severe because it did not cause more than minimal limitation in his ability to perform basic mental work activities.

The Plaintiff notes the ALJ stated he had exhibited "poor effort" with Dr. Vincent, such as in the performance of subtraction calculations. In his Decision, the ALJ states that Plaintiff told Dr. Vincent he tinkered with cars, performed daily activities and was able to drive. Moreover, his thought processes were logical,

coherent and relevant. The Plaintiff had no difficulty relating to Dr. Vincent, was not psychotic, had no abnormal thoughts and could handle his own funds.

The Commissioner notes that Dr. Vincent did not opine that Plaintiff was disabled or find that he had functional limitations that precluded him from working. The Plaintiff told Dr. Vincent that he had symptoms and signs of depression on and off for 20 years and was taking Zoloft, which was prescribed by his primary care doctor. He reported having a poor memory and "being frequently forgetful, with difficulties staying focused on tasks," particularly those tasks requiring a "sustained mental effort." R. 371.

The Plaintiff alleges the ALJ failed to note or discuss any of Dr. Vincent's clinical findings that favored Plaintiff and, further, substituted Dr. Vincent's finding that Plaintiff gave "good effort" (R. 371) for his own opinion that Plaintiff exhibited "poor effort." R. 22. Dr. Vincent stated there were psychological signs of a clinically depressed mood and affect to a moderate degree. He recalled none of three items after five minutes, even after prompting and verbal cues. He was able to remember six numbers forward and four numbers backward. He was able to identify the current president and three former presidents. He was able to identify three large cities but could not name three famous people.

The ALJ's Decision notes that Plaintiff has been treated for depression sporadically by his general treating physician. He has never been hospitalized for a psychiatric disorder and has not undergone extensive psychotherapy. Dr. Vincent opined that Plaintiff has difficulties with depression, secondary to his inability to adjust to physical problems and chronic pain. He suffered insomnia, fatigue, lack of interest in previously enjoyable activities, poor concentration, feeling hopeless, helpless, useless and worthless, problems with lethargy, apathy and stamina, negativity and pessimism, and low positive emotionality. Dr. Vincent further found that Plaintiff had difficulties with focus because of preoccupation with pain and distraction due to frequent shifting of posture. The Plaintiff was diagnosed with a major depressive disorder.

The Plaintiff claims there is no medical support for the ALJ's opinion that Plaintiff gave "poor effort." Illness may have played a role in his failure to comply with test demands. The Plaintiff notes that the SSR 96-2p requires that greater weight be given to Dr. Vincent's opinion than a non-treating state agency reviewer:

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree of medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

The Plaintiff alleges the non-examining doctor's conclusory explanation fails to account for the clinical medical signs observed by the examining doctor. The ALJ's explanation of "poor effort" is not sufficient. Accordingly, the Plaintiff contends that the failure to consider the effect of a severe medical condition is reversible error.

As the Commissioner states, although Dr. Vincent notes that "[e]ffort was good" in describing the test results, Dr. Vincent on the very next page also notes that Plaintiff exhibited poor effort in saying "I can't" when asked to do serial sevens from 100 to 44. The Commissioner also states that although the Plaintiff could explain various proverbs, he was unable to identify three famous people. The ALJ may have believed that to be poor effort as well.

Upon reviewing the record, the Court concludes that the ALJ committed no error in evaluating Dr. Vincent's opinion. Significantly, Dr. Vincent's report does not provide dispositive evidence of disabling functional limitations. The ALJ relied on Dr. Travis's opinion that Plaintiff's depression was not severe. Dr. Travis noted Dr. Vincent's diagnosis and found the Plaintiff to be partially credible. The Court concludes that portion of the ALJ's opinion is supported by substantial evidence.

E. Step Five of Evaluation process

The Plaintiff alleges the ALJ's finding that Plaintiff had no transferable skills but could perform skilled work is contradictory and requires remand. The ALJ found that he could perform skilled work as a security guard and radio dispatcher and semi-skilled work as a telephone operator, despite the Plaintiff having no transferable skills. One cannot perform skilled work without skills. *See* 20 C.F.R. § 404.1568.

Because the ALJ relied on the Grid Rules as a framework in this case and sought testimony from the vocational expert to assess whether the Plaintiff could make an adjustment to other work, the Court concludes that Plaintiff can perform the positions of security guard, radio dispatcher and telephone operator. The vocational expert testified that Plaintiff acquired certain transferable skills from being a corrections officer and from his telecommunications work.

Consequently, the ALJ's error is harmless. The Court concludes the record supports the ALJ's finding that Plaintiff could perform the representative occupations, based on the testimony of the vocational expert.

Ergo, the Motion of Plaintiff Michael A. Lemons for Summary Judgment [d/e 9] is DENIED.

The Motion of Defendant Commissioner of Social Security for Summary Affirmance [d/e 14] is ALLOWED.

The Clerk is Directed to substitute Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, as the Defendant in this case.

The Clerk will enter a Judgment affirming the Commissioner's Decision that Plaintiff is not disabled.

ENTER: January 26, 2018

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge